UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————X

ELIJA JOHNSON

                    Plaintiff,

        -against-

PARAGON RECYCLING & TRANSFER CORP.,

                    Defendant.

————————————————————————X

**OPINION & ORDER**
05-CV-3288 (SJF)(ETB)

FEUERSTEIN, J.

I.    Introduction

        On February 17, 2006, *pro se* plaintiff Elija Johnson ("Plaintiff" or "Johnson")

commenced this employment discrimination action against defendant Pargaon Recycling &

Transfer Corp. ("Defendant" or "Paragon"), pursuant to Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e *et seq*.  Defendant moves for summary judgment pursuant to Fed. R. Civ. P.

56, contending that it is not an "employer" under Title VII because it did not employ fifteen (15)

employees for the requisite period set forth in the statute.  Defendant also contends that, even if it

is deemed an employer under Title VII, Plaintiff has failed to establish that Defendant engaged in

unlawful employment discrimination.  For the reasons set forth below, Defendant's motion for

summary judgment is granted.

II.    Plaintiff's Pleadings

        A *pro se* plaintiff's submissions are held "to less stringent standards than formal

pleadings drafted by lawyers . . . ."  Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v.

Kerner, 404 U.S. 519, 520 (1972)).  To this end, a court must "read the pleadings of a *pro se*

plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'"

1

McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Faretta v. California, 422 U.S. 806 , 834 n. 36 (1975).

III.    Facts

Paragon owns and operates a New York State Department of Environmental Conservation licensed transfer station in West Babylon, New York, which provides waste recycling and transfer services for businesses on Long Island. On or about September 10, 2003, Paragon hired Johnson as a recycler in the transfer station. Johnson's job duties included sorting through garbage that had been dumped at the transfer station and separating out the cardboard, paper, and other recyclables. On or about, April 6, 2004, Glenn Ferrante ("Ferrante"), Paragon's Treasurer/Secretary terminated Johnson. On Johnson's termination date, Paragon employed eight (8) individuals. At no time in 2003 or 2004 did Paragon employ more than (10) ten individuals at any one time.

Johnson alleges that he was not promoted and was ultimately terminated because of his race. Johnson asserts that Ferrante and the former foreman, Frank Basile, called him "bitches and m-f word" and that "acting foreman" Bobby Marino ("Marino") called him a "moulinyan." Johnson alleges that he was paid less than John Alexander ("Alexander"), a Caucasian co-worker who had less seniority.[1] He also alleges that four (4) co-workers hired before him, Grady Books, Anthony Meyers, and John White, all of whom are African-American, and Jose [LNU], who is

---

[1] Contrary to Paragon's understanding, Johnson denies contending that Alexander should have been laid off before him.

2

Hispanic, were paid more than he was paid even though he did more work. Finally, Johnson contends that on the days he arrived at work early, he was asked to work from 7:30 AM to 8:00 AM without pay. Johnson asserts that he was a good worker and that Ferrante did not give him any reason as to why he was terminated.

III.     Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material "if it might affect the outcome of the suit under the governing law." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). An issue of fact is genuine only if a jury could reasonably find in favor of the nonmoving party based on that fact. Id. The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The trial court is required to construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. Id. at 252; Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

The Second Circuit has recognized that direct evidence of discriminatory intent is rare, and often must be inferred from circumstantial evidence found in the pleadings. Holtz, 258 F.3d at 69. Thus, while summary judgment may be appropriate in such cases, it should be done with an extra measure of caution. Id. (citing McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997)); see also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is

3

now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

IV.    Analysis

A. Fifteen Employee Threshold

Under Title VII, the term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year, and any agent of such person." 42 U.S.C. § 2000e(b).  The statute's fifteen (15) employee definition of an "employer" is not a jurisdictional requirement but rather goes to the merits of the claim.  Arbaugh v. Y & H Corp., 546 U.S. ----, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).   Therefore, a Title VII defendant may seek summary judgment on the threshold issue of the number of employees required for Title VII applicability where undisputed facts defeat coverage.  Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 365-6 (2d Cir. 2000).

Defendant contends that it is not an "employer" under Title VII because it did not employee fifteen (15) employees for the requisite period set forth in the statute.  Defendant terminated Plaintiff's employment on or about April 6, 2004.  At the time of Plaintiff's termination, Defendant only employed eight (8) individuals.  Affidavit of Glenn Ferrante ¶ 10 ("Ferrante Aff.").  Moreover, at no time in 2003 or 2004 did Defendant employ more than ten (10) individuals at any one time.  Ferrante Aff.  ¶ 11.  Plaintiff does not dispute Defendant's claim.  Given Plaintiff's failure to establish that Defendant is an "employer" within the meaning

4

of Title VII, Defendant's motion for summary judgment is granted.

### B. Title VII Claim

Assuming *arguendo*, that Defendant is an employer within the meaning of Title VII, Plaintiff's Title VII claim would still fail. Absent direct evidence of discrimination, discrimination claims under Title VII are analyzed under the three-step burden shifting analysis first established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this analysis, Plaintiff must first establish a *prima facie* case of discrimination by showing "1) that he belonged to a protected class; 2) that he was qualified for the position he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004). "Although a plaintiff's burden of establishing a prima facie case is *de minimis*, a Title VII plaintiff's claims nevertheless fail if she cannot make out a prima facie case of discrimination." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004) (internal citations and quotations omitted).

Once a plaintiff establishes a *prima facie* case, "the employer is required to offer a legitimate, nondiscriminatory business rationale for its conduct." Feingold, 366 F.3d at 152. The defendant's burden is to produce, not persuade. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993); Patterson v. County of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004) ("[T]he burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the termination . . ."). "It is important to note, however, that although the McDonnell

5

_Douglas_ presumption shifts the burden of production to the defendant, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's Honor Center, 509 U.S. at 507.

Upon production of a nondiscriminatory motivation for the adverse action, the burden shifts back to the plaintiff, who must offer evidence that suggests that the defendant's proffered reason is a pretext for intentional discrimination. McDonnell Douglas, 411 U.S. at 803. To satisfy this burden, the plaintiff may rely upon the evidence presented in the _prima facie_ case alone. St. Mary's Honor Center, 509 U.S. at 510.

### 1. _Prima Facie_ Case

It is undisputed that Johnson has established the first three (3) elements of a _prima facie_ case for disparate treatment in violation of Title VII.[2] However, Defendant contends that Plaintiff cannot establish that his adverse employment action occurred under circumstances giving rise to an inference of discrimination.

"A showing of disparate treatment - that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group - is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotations and citation omitted). In order to establish a disparate treatment claim, the plaintiff must show that he or she was "similarly situated in all material respects to the individuals with whom [he or she] seeks to compare [himself or herself]." Id. (internal quotations and citation omitted). Generally, the

---

[2]Plaintiff has not raised a disparate impact claim.

6

question of whether two employees are similarly situated is a triable issue for the fact finder. Id.; Graham v. Long Island Railroad, 230 F.3d 34, 39 (2d Cir. 2000). Nonetheless, a plaintiff must offer sufficient evidence from which a jury could reasonably conclude that there was indeed disparate treatment of similarly situated employees. Hayes v. Kerik, 414 F. Supp. 2d 193, 204 (E.D.N.Y. 2006) (citing Khan v. Costco Wholesale Inc., No. 99-CV-3944, 2001 WL 1602168, at *7 (E.D.N.Y. Dec. 13, 2001).

The determination of whether a plaintiff is similarly situated to other individuals in "all material respects," varies on a case by case basis, but must be judged based on (1) whether the plaintiff and those individuals whom he or she maintains are similarly situated to him or her were subject to the same workplace standards; and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. Graham, 230 F.3d at 40. The plaintiff's conduct need not be identical to that of the employee with whom he or she seeks to compare himself or herself in order for the two to be considered similarly situated; rather, there need only be an "objectively identifiable basis for comparability," that is "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." Id. The determination of whether two acts are of comparable seriousness requires an examination of the acts themselves, as well as of the context and surrounding circumstances in which those acts are evaluated. Id.

Plaintiff has not presented any evidence that similarity situated individuals outside his protected class were treated differently. The only person outside of his protected class that Plaintiff identifies to support his claims is Alexander, a white co-worker. Plaintiff contends that Alexander was paid more than he was. However, Plaintiff and Alexander were not subject to the same workplace standards because they performed different jobs. As mentioned above, Plaintiff

7

worked as a recycler. Alexander was a foreman trainee. Ferrante Aff. ¶ 13. Plaintiff does not

dispute this fact. As a foreman trainee, Alexander's duties were substantially different and

included operating vehicles and equipment that picked-up, moved, and/or dumped garbage and

recyclables. Ferrante Aff. ¶ 17. Further, Plaintiff was unqualified for the foreman position

because he did not have a driver's license. Ferrante Aff. ¶ 17. This fact was conceded by

Plaintiff at his deposition. Deposition of Elija Johnson p. 107 ("Pl. Dep."). Alexander and

Plaintiff were not "similarity situated."

Plaintiff also identifies three (3) African-American employees and one (1) Hispanic

employee who were paid more than him. While these four (4) employees also served as

recyclers, they all had more seniority than Plaintiff. Pl. Dep. pp. 88, 91-92. These employees do

not support a claim that Plaintiff suffered different terms and conditions of employment because

of his race. Rather, they show that Defendant paid employees a higher salary, regardless of race,

based on seniority.

Other circumstances that can give rise to an inference of discrimination are actions or

remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus.

See Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 91 (2d. Cir. 1996). Plaintiff

makes a number of allegations in his complaint of foul language being used on the job. Most of

the language that he alleges was not racially charged and Plaintiff has offered no evidence from

which to conclude that the foul language was directed toward racial minorities. Plaintiff

conceded that Frank Basile did not curse at his fellow African-American co-workers, nor did he

yell at anyone else. Pl. Dep. 84-85. Plaintiff also conceded that Ferrante did not curse at his

African-American co-workers, and that he cursed at his own father, and Marino, both of whom

8

are Caucasian. Pl. Dep. 59, 63.

However, Plaintiff does allege that Marino, called him a "moulinyan." Plaintiff does not specify when this alleged comment was made and if it was made more than once. Defendant contends that Marino was not involved with the management of Paragon nor was he in any way involved with the decision to terminate Plaintiff. Ferrante Aff. ¶ 20. Plaintiff contends that Marino was "acting foreman" before Alexander was hired and therefore part of Paragon's management. At the summary judgement stage, the Court must resolve all factual disputes in Plaintiff's favor. As a result, the Court accepts Plaintiff's assertion as true. However, Plaintiff does not contend that Mario was involved in the decision to terminate him.

Marino's language is insufficient to raise an inference of discrimination and Plaintiff has failed to demonstrate a nexus between Marino's comment(s) and Plaintiff's subsequent termination to support an inference of discrimination. The decision to terminate Plaintiff was made by Ferrante and there is no evidence that Ferrante was influenced by Marino's comment(s) or that Marino had anything to do with the decision. When Plaintiff was terminated, Marino was no longer serving as "acting foreman." See Brown v. AstraZeneca Pharmaceuticals, L.P., No. 03-CV-6166, 2006 WL 2376380, *7 (E.D.N.Y. Aug. 16, 2006) ("If no such nexus exists, the comments are merely 'stray remarks' which do not lead to an inference of discrimination."). Plaintiff has failed to establish the fourth element of a *prima facie* case of discrimination under Title VII.

### 2. Defendant's Nondiscriminatory Rationale

Plaintiff has not established a *prima facie* case of race discrimination. Thus, the burden

9

does not shift to Defendant to rebut any inference of discrimination with a legitimate, nondiscriminatory reason for Plaintiff's termination. However, assuming, *arguendo,* that Plaintiff had established a *prima facie* case, Defendant would still prevail because it has established that it had a legitimate nondiscriminatory reason for terminating Plaintiff's employment. Defendant asserts that it eliminated Plaintiff's position for economic reasons. Ferrante Aff. ¶7. Plaintiff was selected for termination because he was the least senior recycler at the time. Ferrante Aff. ¶8. This evidence would be enough to rebut an inference of discrimination if Plaintiff had established a *prima facie* case. See Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1226 (2d Cir.1994).

### 3. Pretext

If Plaintiff had successfully established a *prima facie* case, and where as here, Defendant has alleged a nondiscriminatory reason for firing Plaintiff, the burden would shift back to Plaintiff to demonstrate by a preponderance of the evidence why the reason stated by Defendant for his termination is merely a pretext for race discrimination. To create a genuine issue of material fact at this stage requires a plaintiff to present sufficient evidence to show that the employer's asserted justification for the adverse action is false. See Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citing McDonnell Douglas Corp., 411 U.S. at 804). Such evidence "may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).[3] Plaintiff does not

---

[3]Reeves was decided under Fed .R. Civ. P. 50 (not Rule 56 as in this case), however "the inquiry under each is the same." Reeves, 530 U.S. at 150.

provide any evidence as to how Defendant's actions could be construed as pretext, and, liberally reading Plaintiff's submissions, as the Court must, it can find no evidence on his behalf. As Plaintiff fails to meet his burden, Defendant's motion for summary judgment is granted in its entirety.

V.      Conclusion

For the reasons set forth above, Defendant's motion for summary judgement is GRANTED. The action is dismissed. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Sandra J. Feuerstein
United States District Judge

Dated: October 3/, 2006
Central Islip, New York

Copies:

Elija Johnson, *pro se*
133 Coolidge Avenue
Amityville, NY 11701

Adam C. Weiss
Littler Mendelson
532 Broadhollow Rd., Suite 142
Melville, NY 11747